**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jaqueline Richardson and Valerie Geaither, on behalf of themselves and a class of similarly situated persons,

Plaintiffs,

v.

Metropolitan State University, Minnesota State Colleges and University System (MnSCU), a/k/a MnSCU, f/k/a Minnesota State University System,

Defendants.

Civil No. 00-2295 (DWF/RLE)

**MEMORANDUM OPINION AND ORDER**

---

Edwin L. Sisam, Esq., Dorothy J. Buhr, Esq., and Tammy P. Friederichs, Esq., Sisam & Watje, 7230 Metro Boulevard, Minneapolis, MN 55439, and Ronald L. Futterman, Esq., Futterman & Howard, 122 South Michigan Avenue, Suite 1850, Chicago, IL 60603, counsel for Plaintiffs.

Gary R. Cunningham, Assistant Attorney General, Minnesota Office of the Attorney General, Suite 1100, 445 Minnesota Street, St. Paul, MN 55101, counsel for Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on August 16, 2002, pursuant to Plaintiffs' motion for class certification. In the Complaint, Plaintiffs allege gender discrimination with respect to compensation. For the reasons set forth below, Plaintiffs' motion is denied.

## Background

Plaintiff Professor Jacqueline Richardson began tenure-track employment at Metropolitan State University in 1993. She is currently a Full Professor in the Department of Human Services. Plaintiff Professor Valerie Geaither began tenure-track employment at Metropolitan State

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

University in 1991. She is currently an Assistant Professor in the Department of Human Services.

In April of 2000 and July of 2000, respectively, Richardson and Geaither filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging sex-based wage discrimination. The EEOC issued "right to sue" letters to both Plaintiffs in July of 2000. Richardson and Geaither then brought this action on behalf of themselves and other similarly situated female faculty at Metropolitan State University. They now seek certification of the following Plaintiff Class:

> All female faculty of Metropolitan State University, who are employed, have been employed, or will be employed by Metropolitan State University and MnSCU from June 1999 through the present, who receive less compensation because of their sex.

**Discussion**

**1. Standard of Review**

Plaintiffs requesting class certification must satisfy both "implicit" and "explicit" legal requirements. Plaintiffs must first establish that a defined class exists and that the class representatives fall within that class. *See Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 659-60 (D. Minn. 1991) (citing *East Texas Motor Freight System v. Rodriguez*, 431 U.S. 395, 403 (1977)). Once Plaintiffs have satisfied these implicit requirements, the Plaintiffs must then establish their entitlement to class certification under Rule 23.

In determining the propriety of class action certification, the question is not whether the plaintiffs have stated a cause of action or will ultimately prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974).

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the threshold requirements for certification of a class. Class certification is appropriate when:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to the threshold requirements of Rule 23(a), a class action is only appropriate if one of the circumstances set forth in Rule 23(b) is also present. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(2) or 23(b)(3). Rule 23(b)(2) applies to situations in which class-wide injunctive or declaratory relief is appropriate. Rule 23(b)(3) allows for certification of a class when common questions of law or fact predominate over individual questions and class action is a superior method for resolving the claims.

The party seeking class certification bears the burden of establishing each prerequisite element to certification. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). A Court will only certify a class if, after "rigorous analysis," the Court is satisfied that all of the requirements of Rule 23 have been met.

**2. Analysis of the Proposed Class**

Without belaboring the less controversial requirements of Rule 23(a)–numerosity, typicality, and adequacy–the Court will jump straight to consideration of the commonality requirement of Rule 23(a).

Plaintiffs must show that there exist questions of fact and/or law which are common to all potential members of the class. Here, the Plaintiffs assert that all members of the putative class

were subject to the same discriminatory system of compensation which resulted in systematic disparity in compensation between similarly situated men and women.

In her statistical analysis, which forms the heart of Plaintiffs' case, Plaintiffs' expert considered the effect of various factors on faculty salaries. Among those factors Plaintiffs' expert considered were gender, possession of a Ph.D., and an interaction between those variables. Plaintiffs' expert concluded that all three of these variables were significant determinants of faculty salary.

On September 3, 2002, this Court requested Plaintiffs' expert, Christine Brown Mahoney ("Brown Mahoney"), to parse out the effects of gender on salary for women with Ph.D.s and women without Ph.D.s. The Court's request was not based on any predisposition to split the proposed class, but, rather, was based on Brown Mahoney's own operationalization of the salary model and her own conclusion that there is a significant interaction between gender and possession of a Ph.D. in determining faculty salary.

In response, Brown Mahoney performed separate regression analyses for faculty with Ph.D.s and faculty without Ph.D.s.[1] Brown Mahoney found that gender is a significant determinant of salary for faculty without Ph.D.s, and women make less than similarly situated

[1] Frankly, this was not the sort of "parsing" the Court had in mind. As Defendants' expert points out, there are methods which allow an analyst to use the coefficients from both the separate effects and interaction effects of two variables to create a two-by-two matrix of differential effects. Brown Mahoney chose to achieve an approximation of this result through the use of two separate regression analyses. It is true that, because of the smaller sample sizes employed in the two separate analyses, she lost some statistical power in her models and made significant results more difficult to achieve. However, the gender coefficient in the "with Ph.D." analysis is not simply insignificant, it is positively signed, meaning that the women in this group actually made more than similarly situated men. Such a finding cannot be attributed to sample size.

men. However, with respect to faculty with Ph.D.s, she actually found that the women make more than the men (although the disparity is far from significant).

Plaintiffs seem to argue that this finding, that women with Ph.D.s actually make slightly more than similarly situated men with Ph.D.s, is insignificant and should be disregarded entirely by the Court. Specifically, Plaintiffs suggest that women with Ph.D.s may still be discriminated against if they make less than men *without* Ph.D.s, with whom they are not compared at all in any of Brown Mahoney's analyses. It is possible, though improbable, that men without Ph.D.s are making more than women with Ph.D.s–although that would mean that they are also making more than men with Ph.D.s. But the fact remains that the statistical evidence presented to the Court by Plaintiffs' own expert indicates: (1) there is an interaction between possession of a Ph.D. and gender in determining salary and (2) gender only predicts salary for faculty without Ph.D.s, not faculty with Ph.D.s. If women with Ph.D.s are also discriminated against, such a finding is not supported by any statistical evidence provided by Brown Mahoney.

It is true that "[t]he [commonality] rule does not require that every question of law or fact be common to every member of the class." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). Rather, it is sufficient that the Plaintiffs identify a common question of law or fact which is "substantially related" to the ultimate merits of the litigation, even if the individual class members are not identically situated. *Id.* Here, however, the fact that women with Ph.D.s and women without Ph.D.s are differently situated with respect to disparity in compensation cuts to the very heart of the Plaintiffs' claims. It would be an abuse of Rule 23 to certify a class of all female faculty when Plaintiffs' own expert has identified an important distinction within the population of female faculty, a distinction with implications for the ultimate fact question of whether women are paid less than men.

Based upon the record currently before the Court, the Court declines to certify a Plaintiff Class at this time. It is possible that additional statistical evidence would lead the Court to conclude that certification of a single class of all female faculty would be appropriate. It is also possible that certification of two sub-classes would be appropriate, although that possibility is not currently before the Court and is, in fact, criticized by both sides of the litigation. Similarly, it is possible that the Court might ultimately certify a class consisting only of female faculty without Ph.D.s, although the Court notes Defendants' concerns about the ability of a class thus defined to meet the numerosity requirements of Rule 23. The only question currently before the Court is whether the existing record supports certification of the proposed class as defined by the Plaintiffs, and the Court concludes that it does not.

The Court recognizes that the effect of this decision is to place the female faculty at Metropolitan State University in a position different from the female faculty at the other MnSCU schools, all of whom have been joined as members of various other class action lawsuits. The fact remains that each of these lawsuits, while sharing certain obvious attributes and presenting overlapping legal and factual issues, must rise or fall on its own merits. Here, the Plaintiffs have simply not provided sufficient evidence to support certification of a class. The Court hopes that, to the extent that the Plaintiffs' claims nevertheless have merit, the Defendants will not take this small victory in Court as a license to turn a blind eye to any existing discrimination. Rather, the Court is hopeful that the various State Defendants will attempt to foreclose the need for any further litigation, on the issue of class certification or on the merits of the individual Plaintiffs' claims, by attempting to rectify any genuine disparity in compensation based upon gender.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Certify a Class (Doc. No. 15) is **DENIED**.

Dated: October 2, 2002

DONOVAN W. FRANK
Judge of United States District Court